Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as a fact and concludes as a matter of law the following, which was entered into by the parties at the hearing before the Deputy Commissioner as a
STIPULATION
1. Defendants paid compensation to plaintiff through September 28, 1995.
******************
The Full Commission adopts in part and modifies in part the findings of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. As found in the previous Opinion and Awards, plaintiff, who worked as a truck driver for defendant, sustained a compensable injury by accident on February 15, 1990 when he was knocked down by a forklift and hurt his back. Defendant admitted liability for the injury pursuant to a Form 21 agreement which was approved by the Industrial Commission. Except for a few days where he returned to light work, he had not worked since the injury when the case was originally heard on December 1, 1992. He was found to have remained unable to work through that date and defendant was directed to pay continuing temporary total disability compensation to him. Consequently, defendant and its successor in interest, Tyson Foods (Tyson), paid weekly benefits to him thereafter.
2. Plaintiff remained under the care of Dr. Richard Adams, an orthopedic surgeon who had treated him since July 1990. As of 1994 plaintiff still did not have any neurologic findings and Dr. Adams did not believe that he would benefit from surgery. Consequently, the doctor continued to treat him conservatively with medication for his persistent complaints of low back and leg pain which he indicated was worse with activity.
3. In March 1995 Dr. Adams released plaintiff to return to work at light duty with no repetitive lifting over five pounds, no prolonged bending, stooping or climbing, and with the option of sitting and standing intermittently. Eight job descriptions were then submitted to the doctor for positions available through defendant-employer, all of which Dr. Adams approved for four hours per day. The jobs generally involved lifting small chicken parts and doing something with them, such as inspecting them, checking them for bones, placing them into something or dropping them into a chute. The jobs could be performed using an ergonomic sit stand, a device provided for the employees which allowed them to either sit or to stand while performing their job, and, if desired, while standing they could lean against a padded support.
4. Plaintiff was then instructed to report for work on June 12, 1995, and he did go to the plant on that date. Despite reasonable accommodations by defendant to allow him to use the sit stands and the elevator, plaintiff refused to even observe the jobs being offered, and he failed to report to work after that date.
5. The defendant then decided to hire a private investigations firm to conduct surveillance on plaintiff. His activities were observed and video taped on several occasions in July 1995. His movements did not appear to demonstrate restrictions of movement and he did not appear to be in pain as he engaged in routine activities such as pumping gas and shopping. On July 18, 1995 he was observed squatting, sitting, and lying on the ground for extended periods while trying to decide how to fix a slashed tire on his boat trailer. He then jacked up the trailer while lying on his side beneath it, loosened the lug nuts with a tire iron, removed the tire and then carried it to his truck. His activities on that occasion were contrary to the symptoms he had been complaining of to Dr. Richard Adams and to the condition he described in his testimony; however, these activities also gave rise to renewed complaints of pain which plaintiff reported to Dr. Adams subsequently.
6. After viewing the surveillance video tapes, Dr. Adams wrote a letter to Mrs. Kathy Goforth of Tyson Foods on September 13, 1995 (Defendant's Exhibit 17) in response to questions set forth in her letter to him of August 8, 1995, in which he observed that "I would have to say that some of the activities are beyond his stated capabilities."
7. Defendant then filed a Form 24 request to stop payment with the Commission which was allowed effective June 20, 1995 by order filed October 5, 1995.
8. Defendant has proven that there was suitable work offered to plaintiff which he refused without justification and they have also proffered evidence that plaintiff may have misrepresented his condition to his physician and to the Commission. He appears possibly to be capable of more activity than he has indicated.
9. Plaintiff has been capable of doing light duty work and earning some wages since at least June 13, 1995. The extent of his wage-earning capacity cannot be determined until he makes a legitimate effort to engage in a trial return to work. In any event, the defendant offered suitable work to him on June 12, 1995, and he refused it without justification, thereby entitling defendants to suspend benefits during the period of refusal. The employment offered by the defendant would have been light duty, sedentary work for four hours a day at diminished wages; however, a refusal of suitable employment suspends all compensation during the period of refusal.
10. The defendant has paid plaintiff disability compensation during a part of the period of plaintiff's refusal of part-time employment for which the defendant is entitled to credit.
******************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. Due to his refusal to accept suitable employment without justification, plaintiff is not entitled to further compensation after June 12, 1995 for so long as his refusal continues. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-32.
2. A refusal of suitable employment suspends all compensation during the period of refusal. N.C. Gen. Stat. § 97-32.
3. The defendant is entitled to credit for disability payments made to plaintiff from January 12, 1995 through September 28, 1995. N.C. Gen. Stat. § 97-32.
******************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff is not entitled to further compensation after June 12, 1995, for the duration of his refusal of suitable employment, and his disability compensation is herewith suspended for such period of time.
2. Since plaintiff's compensable disability has not been resolved and his permanent disability has not been determined, these issues are reserved for subsequent determination.
3. Each side shall pay its own costs.
 S/ ___________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ___________________________ WILLIAM C. BOST DEPUTY COMMISSIONER
S/ ___________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER